UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

        Plaintiff,

   vs.                REPORT AND RECOMMENDATION

Christopher Michael Strong,

        Defendant.       Crim. No. 09-375 (DWF/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motions of the Defendant to Suppress Evidence Obtained as a Result of Search and Seizure, and to Suppress Statements, Admissions and Answers.[1]

---

[1]At the close of the Hearing, the parties requested leave to submit post-Hearing memoranda on the legal issues raised by the Defendant's Motions, and leave was granted, although the parties ultimately declined to submit any briefing. Accordingly, the Court took the matter under advisement on January 21, 2010. See, Title 18 U.S.C. §3161(h) (1)(D) and (H); Henderson v. United States, 476 U.S. 321, 330-32 (1986), aff'd, 476 U.S. 321 (1986); United States v. Blankenship, 67 F.3d 673, 676-77 (8th Cir. 1995).

A Hearing on the Motions was conducted on January 12, 2010, at which time, the Defendant appeared personally, and by Caroline Durham, and the Government appeared by Clifford B. Wardlaw, Assistant United States Attorney. For reasons which follow, we recommend that the Defendant's Motions to Suppress be denied.

## II. Factual Background

The Defendant has been charged with one Count of Aggravated Sexual Abuse, in violation of Title 18 U.S.C. §§1151, 1153(a), 2241(a)(1), and 2246(2); one Count of Kidnapping, in violation of Title 18 U.S.C. §1201(a)(2), 1151, and 1153(a); and one Count of Assault Resulting in Serious Bodily Injury, in violation of Title 18 U.S.C. §§113(a)(6), 1151, and 1153(a). The events which gave rise to the pending charges are alleged to have occurred between November 9, 2009, and November 11, 2009, within the exterior boundaries of the Red Lake Indian Reservation, which is located within this State and District. As pertinent to those charges, and to the Motions now before us, the operative facts may be briefly summarized.[2]

---

[2]Rule 12(d), Federal Rules of Criminal Procedure, provides that "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record." As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion. Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are

(continued...)

At the Hearing, the Government introduced as Exhibits, two (2) Search Warrants and supporting papers, which are dated November 13, 2009, and November 18, 2009. Turning to the first Search Warrant, we note that it is comprised of the Search Warrant itself, a supporting Affidavit, an Attachment that described the items that were the focus of the search, and an Inventory Return. See, Government's Exhibit 2. The Search Warrant, which was issued by a United States Magistrate Judge on November 13, 2009, authorized a search of the northwest bedroom, which was located on the right-hand side at the end of the hallway, in the residence of Rodney Dale Stillday, Sr. ("Stillday"), that was identified as a single-story, single-family dwelling, situated at a specific address on the Red Lake Indian Reservation.

In support of that Search Warrant, Larry Wesbey ("Wesbey"), who is a Special Agent with the Federal Bureau of Investigation ("FBI"), submitted an Application and Affidavit, which set forth the reasons that he believed that evidence of criminal activity would be found in the northwest bedroom of the Stillday residence. Wesbey averred that the information contained in his Affidavit was provided by Michael J.

[2](...continued)
subject to such future modification as the subsequent development of the facts and law may require. See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991), cert. denied, 505 US 1228 (1992); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

Iverson ("Iverson"), who is also a Special Agent with the FBI. Iverson is assigned to the investigation of violent crimes that occur on the Red Lake Indian Reservation.

Based upon the information provided by Iverson, Wesbey averred that, at approximately 11:00 o'clock p.m., on November 11, 2009, the Red Lake Police Department ("RLPD") responded to a report of an assault at the Stillday residence. Law enforcement had already been at the Stillday residence that day, for unspecified reasons, and the most recent report indicated that a woman, who will be identified with the initials C.J.S., had been physically assaulted, and that every time law enforcement arrived at the residence, C.J.S. was pushed into the back of the residence, and "made to stay quiet." RLPD Sergeant Dana Lyons, Jr. ("Lyons"), arrived on the scene, and was told that C.J.S. was in the back bedroom. Stillday granted Lyons permission to enter the residence, where Lyons observed C.J.S. lying on a bed with the Defendant, in the northwest bedroom. Wesbey further avers that C.J.S. and the Defendant are married.

According to Wesbey's Affidavit, Lyons observed that C.J.S.'s eyes were swollen shut, and that she had a laceration to the right side of her jaw. C.J.S. said, "Chris did this to me." Lyons noted that C.J.S.'s arms, legs, shoulder, and face, were bruised, and that she had a bite mark on the left side of her back. C.J.S. told Lyons

that the Defendant had smashed her face against a wooden stand, and had punched and kicked her, on either November 9, 2009, or November 10, 2009. C.J.S. further reported that, following the assault, the Defendant found her at the hospital and took her back to the Stillday residence and, after that, he would not let her go to the hospital or leave the residence.

During an interview on November 12, 2009 with Iverson and RLPD, Criminal Investigator Brian Peterson ("Peterson"), C.J.S. advised that she and the Defendant had been living in the northwest bedroom, which is located on the right-hand side at the end of the hallway in the Stillday residence, for approximately eight (8) months. C.J.S. advised that the hallway extended to the left of the residence, after entering the front door, and that the wood stand that the Defendant used to smash her head was located in the bedroom. C.J.S. also reported that her blood was located on a mattress and on the walls of the bedroom.

Based upon this information, Wesbey concluded that there was probable cause to believe that, between November 9, 2009, and November 11, 2009, the Defendant assaulted C.J.S., by striking, beating, or wounding her, and that evidence of the assault could be found in the northwest bedroom of the Stillday residence. Specifically, Wesbey believed that the following evidence would be found in the bedroom: trace

evidence, including blood, bodily fluids, hair, fiber, tissue, and DNA evidence; items located in the bedroom that may contain trace evidence; instruments of weaponry, including but not limited to shoes or other objects or items that may have been used to assault C.J.S.; documents or items indicative of occupation or presence in the bedroom, including identification, bills, records, and personal documents; and evidence derived from photographs, videotapes, and scale drawings, produced by law enforcement during its search for those items.

On November 23, 2009, Wesbey filed an Inventory Return, in which Wesbey reported that he executed the Search Warrant on November 13, 2009, at 5:05 o'clock p.m., and, in his search of the northwest bedroom, he seized the following evidence: a control swab; swabs from the box spring, night stand, walls, ceiling, and the top of the mattress; and a floral pattern bed spread from the corner of the bedroom.

Turning to the second Search Warrant, we note that it was signed by a United States Magistrate Judge on November 18, 2009, and includes an Application and Search Warrant, a supporting Affidavit, and an Inventory Return. See, Government's Exhibit 1. The second Search Warrant authorized the seizure of DNA evidence from the Defendant, and specifically permitted the taking of two (2) cotton swabs drawn from the Defendant's mouth.

In support of that Search Warrant, Iverson submitted an Application and Affidavit, which set forth the reasons that caused him to believe that evidence of criminal activity would be found through samples of the Defendant's DNA. The Affidavit noted that Iverson had been a Special Agent with the FBI since July of 2004, and that his primary responsibility is investigating violent crimes that occur on the Red Lake Indian Reservation.

As also recounted in the first Search Warrant Application, Iverson averred that at approximately 11:00 o'clock p.m., on November 11, 2009, the RLPD arrived at the Stillday residence, after receiving a complaint that an adult female -- namely, C.J.S. -- had been beaten. RLPD officers, who had already been called to the Stillday residence earlier that same day for unspecified reasons, "were informed that every time they attempted to investigate, C.J.S. was pushed into the back of the residence and forced to stay quiet." Lyons was informed, upon arriving at the Stillday residence, that C.J.S. was in the back bedroom. After receiving Stillday's permission to enter the residence, Lyons found C.J.S. lying on a bed with the Defendant in the back northwest bedroom.

Similar to the first Search Warrant, Iverson averred that, when Lyons entered the bedroom, C.J.S. said, "Chris did this to me." Lyons observed that C.J.S. had

bruises on her arm, legs, shoulder, face, as well as a bite mark on the left side of her back.  According to Iverson, C.J.S. told Lyons that the Defendant had smashed her face against a wooden stand, and had punched and kicked her on November 9 or 10, 2009.

According to Iverson's Affidavit, during the interview with Iverson and Peterson, C.J.S. stated that the Defendant had forced her to have sex with him, and that she only had sex with him to avoid additional beatings.  Specifically, C.J.S. reported that the Defendant forced her to have sex with him four (4) times at the Stillday residence, and once while they were at the house of the Defendant's parents, which is also located on Red Lake Indian Reservation.  C.J.S. also  reported that the Defendant had strangled her, that she thought she was going to die that night, and that she could no longer see because her eyes had swollen shut as a result of the beating.

According to Iverson, C.J.S. further reported that, on November 10, 2009, a number of the Defendant's relatives attempted to take C.J.S. to the hospital.  When C.J.S. was leaving, the Defendant came from the bedroom or bathroom of the Stillday residence, and said, "F--k no you're not,"  and dragged her back inside.  Iverson averred that C.J.S. was later treated at the Red Lake Indian Health Service, and Saint

Joseph's Medical Center in Brainerd, Minnesota, where she received multiple layers of stitches to her jaw.

Based upon that information, Iverson expressed his belief that there was probable cause to conclude that, between November 9, 2009, and November 11, 2009,the Defendant assaulted C.J.S., resulting in serious bodily injury, and that the Defendant forced C.J.S. to engage in a sexual act by using force.  Iverson believed that evidence of those crimes would be found on the Defendant, in the form of a saliva sample obtained from swabbing the interior linings of his mouth and gums.  Iverson further averred that, "[b]y obtaining a saliva sample from Strong, a forensic science laboratory will be able to obtain a DNA profile and compare it to DNA profiles obtained from collected evidence."  Iverson noted that two (2) samples would be necessary in order to ensure that the laboratory would have a sufficient amount of cells to perform the necessary analysis.

An Inventory Return was submitted on November 30, 2009, which reported that Iverson executed the Search Warrant on November 19, 2009, at 1:15 o'clock p.m., and that he took two (2) buccal swabs from the Defendant at that time.

## III.  Discussion

A.    The Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure.

1. <u>Standard of Review</u>. In the issuance of a Search Warrant, the Fourth Amendment dictates that an impartial, neutral, and detached Judicial Officer, will assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search, or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband. See, <u>Warden v. Hayden</u>, 387 U.S. 294 (1967); <u>United States v. Johnson</u>, 64 F.3d 1120, 1126 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996). In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting Affidavit, there is a fair probability that contraband, or evidence of a crime, will be found in a particular, designated place. See, <u>United States v. Gladney</u>, 48 F.3d 309, 313 (8th Cir. 1995); <u>United States v. Tagbering</u>, 985 F.2d 946, 949 (8th Cir. 1993). For these purposes, probable cause is "a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983); see also, <u>Ornelas v. United States</u>, 517 U.S. 690, 695 (1996).

"Search warrant '[a]pplications and affidavits should be read with common sense and not in a grudging hyper technical fashion.'" <u>United States v. Ryan</u>, 293 F.3d 1059, 1061 (8th Cir. 2002), quoting <u>United States v. Goodman</u>, 165 F.3d 610, 613

(8th Cir. 1999), cert. denied, 527 U.S. 1030 (1999). In conducting such an examination, the Court should review the Affidavits as a whole, and not on a paragraph-by-paragraph basis. See, <u>United States v. Anderson</u>, 933 F.2d 612, 614 (8th Cir. 1991); <u>Technical Ordnance, Inc. v. United States</u>, 244 F.3d 641, 649 (8th Cir. 2001), cert. denied, 534 U.S. 1084 (2002). Moreover, the reviewing Court must not engage in a <u>de novo</u> review but, rather, should accord great deference to the decision of the Judicial Officer who issued the Warrant. See, <u>United States v. Maxim</u>, 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516 U.S. 903 (1995); <u>United States v. Curry</u>, 911 F.2d 72, 75 (8th Cir. 1990), cert. denied, 498 U.S. 1094 (1991). This mandated deference to the determination of the issuing Judicial Officer is consistent with the Fourth Amendment's sound preference for searches that are conducted pursuant to Warrants. See, <u>Illinois v. Gates</u>, supra at 236.

2. <u>Legal Analysis</u>. As noted, the Defendant has moved to suppress evidence that was obtained during the execution of both Search Warrants. No testimony was adduced at the Hearing on the Defendant's Motion, and therefore, we limit our consideration to the "four corners" of the Search Warrant and Supporting Affidavit, since the Defendant has solely urged the suppression of any evidence obtained, pursuant to the Search Warrants, on the basis of the "fruit of the poisonous

tree " doctrine, see, <u>Wong Sun v. United States</u>, 371 U.S. 471, 484-88 (1963), as having been tainted by the assertedly unlawful arrest of the Defendant by the RLPD.

The Government contends that, regardless of the legality of the Defendant's arrest by the RLPD, there was an independent source for probable cause, based upon the victim's statement to law enforcement, in which she recounted the circumstances of the alleged assaults that occurred. We agree.[3] Accordingly, we proceed to address each Search Warrant, in turn.

a. <u>Search Warrant for the Northwest Bedroom in the Stillday Residence</u>.

Our review of the Search Warrant for the northwest bedroom in the Stillday residence, and the underlying Affidavit, confirms the appraisal of the issuing Judicial Officer, that ample probable cause supported the issuance of the Warrant, and that the Warrant was not otherwise fatally defective. We further conclude that the information contained in the Affidavit does not otherwise invalidate the Search Warrant, as "fruit of the poisonous tree."

---

[3]We make no conclusions or findings as to the actual legality of the Defendant's initial arrest by RLPD, given our conclusion that no taint would flow to the evidence seized by virtue of the Search Warrants.

At the outset, we recognize that the vast majority of the information in Wesbey's Affidavit, which was offered in support of the Application for the Warrant for the Stillday residence, was derived from information provided by Special Agent Iverson. However, it is well settled that law enforcement officers can rely upon information provided by other law enforcement officers, so long as the reliance is reasonable. See, <u>Doran v. Eckold</u>, 409 F.3d 958, 965 (8th Cir. 2005), citing <u>United States v. Hensley</u>, 469 U.S. 221, 232 (1985); see also, <u>United States v. Wells</u>, 347 F.3d 280, 287 (8th Cir. 2003), cert. denied, 541 U.S. 1081 (2004), quoting <u>United States v. Horne</u>, 4 F.3d 579, 585 (8th Cir. 1993)("[P]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication."). Accordingly, the fact that much of the information that Wesbey relied upon was provided by other law enforcement officers, as opposed to his own personal observations, does not invalidate the Search Warrant.

The exclusionary rule prevents the admission of physical or testimonial evidence, which has been gathered by law enforcement illegally. See, <u>United States v. Reinholz</u>, 245 F.3d 765, 779 (8th Cir. 2001), cert. denied, 534 U.S. 896 (2001),

citing Wong Sun v. United States, supra.  Here, we note that the evidence was not seized during the assertedly unlawful police conduct, but "[t]he exclusionary rule 'reaches not only primary evidence obtained as a result of an illegal search or seizure * * * but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree."  United States v. Swope, 542 F.3d 609, 613 (8th Cir. 2008), cert. denied, --- U.S. ---, 129 S.Ct. 1018 (January 21, 2009), quoting Segura v. United States, 468 U.S. 796, 804 (1984); United States v. Dickson, 64 F.3d 409, 410 (8th Cir. 1995), cert. denied, 516 U.S. 1064 (1996).

However, that exclusionary rule is inapplicable where the Government shows that there is a source for the discovery of the evidence that is independent from the initial illegality.  See, United States v. Swope, supra; United States v. Khabeer, 410 F.3d 477, 483 (8th Cir. 2005)("The independent source doctrine provides that evidence initially discovered during an unlawful search, but later obtained independently through activities untainted by the illegality, may be admitted into evidence."), citing Murray v. United States, 487 U.S. 533, 537 (1988); United States v. Reinholz, supra at 779 ("Under the 'independent source doctrine,' the challenged evidence is admissible if it came from a lawful source independent of the illegal conduct.").  "This rule is rooted in the view that 'the interest of society in deterring unlawful police

conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred.'" United States v. Khabeer, supra at 483.

"To uphold a warrant on independent information, the prosecution must satisfy two separate inquiries: (1) the decision to seek the warrant must not have been prompted by what was learned from the illegal conduct; and (2) illegally obtained information must not have affected the magistrate judge's decision to issue a warrant." United States v. Robinson, 441 F. Supp.2d 1029, 1035-1037 (D. Minn. 2006), aff'd, 536 F.3d 874 (8th Cir. 2008), cert. denied, --- U.S. ---, 129 S.Ct. 445 (December 8, 2008), citing Murray v. United States, supra at 542, and United States v. Mithun, 933 F.2d 631, 635-636 (8th Cir. 1991), cert. denied, 502 U.S. 869 (1991); see also, United States v. Khabeer, supra.

Here, it does not appear that any information, that was obtained as a result of the Defendant's arrest, was included in the Affidavit for the Search Warrant. Notably, the Defendant did not provide a statement, nor was the seizure of any evidence, as a result of his arrest, used to support the Search Warrant. Accordingly, we find that the decision to seek the Search Warrant was not prompted by knowledge that law

enforcement learned as a result of the Defendant's arrest, and similarly, we find that no unlawfully obtained evidence tainted the Magistrate Judge's consideration of the Application for the Search Warrant.

Moreover, as we will now detail, we find that the Judicial Officer had probable cause to issue the Warrant, based solely on the information that was provided by C.J.S., who is the alleged victim of the purported assault.[4]  C.J.S.'s statements were

---

[4]We note that, in light of our conclusion that the Search Warrants are supported by an independent source -- namely, the victim's statement to law enforcement -- we conclude that any warrantless entry would also not require the suppression of any evidence obtained pursuant to the Search Warrants, as 'fruit of the poisonous tree.'

Nevertheless, it appears that the warrantless entry of the Stillday residence was not in violation of the Fourth Amendment, based upon the information provided in the Record.  We recognize that, as a general rule, a Warrant is required to enter the home of a defendant.  See, United States v. Walsh, 299 F.3d 729, 733 (8th Cir. 2002), cert. denied, 537 U.S. 1066 (2002).  However, an exception arises when "the government demonstrates that exigent circumstances exist 'making the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment."  United States v. Valencia, 499 F.3d 813, 815 (8th Cir. 2007), quoting Mincy v. Arizona, 437 U.S. 385, 394 (1978).  Here, we note that the circumstances undoubtedly gave rise to exigent circumstances.  Law enforcement had been notified that C.J.S. had been beaten by the Defendant, and was being cloistered within the Stillday residence by the Defendant.  Moreover, upon arriving at the Stillday residence, the police were informed that C.J.S. was in fact hidden in the residence. Given the presence of a victim, who had been physically assaulted, and was currently being hidden in the residence, exigent circumstances justified RLPD's entry into the residence.  See, United States v. Janis, 387 F.3d 682, 687 (8th Cir. 2004)("We have long held the 'view that legitimate concern for safety of individuals may constitute
(continued...)

independent of any unlawful police conduct, and therefore, they provided a wholly independent, untainted basis for the Search Warrant. See, United States v. Conner, 948 F. Supp. 821, 857 (N.D. Iowa 1996)(where "an application for a search warrant includes both tainted and untainted evidence * * * the search warrant may be upheld if the untainted evidence, standing alone, establishes probable cause."), aff'd, 127 F.3d 663 (8th Cir. 1997); citing, United States v. Restrepo, 966 F.2d 964, 968-71 (5th Cir. 1992), cert. denied, 506 U.S. 1049 (1993); United States v. Herrold, 962 F.2d 1131, 1140-1143 (3rd Cir. 1992), cert. denied, 506 U.S. 958 (1992).

We note that Wesbey averred that C.J.S. advised law enforcement, during an interview, that the Defendant had physically assaulted her by smashing her face with

---

[4](...continued)
'exigent circumstances' justifying warrantless entries and searches.'"), quoting United States v. Antwine, 873 F.2d 1144, 1147 (8th Cir. 1989); see also, United States v. Vance, 53 F.3d 220, 222 (8th Cir. 1995). Moreover, this conclusion is further buttressed by the fact that Stillday gave permission for the RLPD officers to enter the home. See, United States v. Janis, supra at 686 (warrantless entry is valid when based upon consent of person who has apparent authority of the premises), citing Illinois v. Rodriguez, 497 U.S. 177, 185-86 (1990).

Accordingly, to the extent the Defendant may also be challenging the Search Warrant as the "fruit of the unlawful entry," we conclude that nothing in the Record suggests that the entry was unreasonable under the Fourth Amendment. We have, nevertheless, confined our analysis of probable cause to information derived solely from the alleged victim's statements.

a wooden stand, and that he punched and kicked her sometime between November 9, 2009, and November 10, 2009. She also told law enforcement that the wooden stand, with which the Defendant had smashed her head, was located in the bedroom at the Stillday residence, and that her blood could be found on the mattress and walls of the bedroom. It well-established that "law enforcement officers are entitled to rely on information supplied by the victim of a crime, absent some indication that the information is not reasonably trustworthy or reliable." Clay v. Conlee, 815 F.2d. 1164, 1168 (8th Cir. 1987), citing Easton v. City of Boulder, 776 F.2d 1441, 1449 (10th Cir. 1985), cert. denied, 479 U.S. 816 (1986)("[T]he skepticism and careful scrutiny usually found in cases involving informants * * * is appropriately relaxed if the informant is an identified victim."). Quite plainly, a victim's statement, which specifically, and in detail, outlines the nature and location of the crime, and any corresponding evidence, is sufficient to establish probable cause.

We recognize that probable cause also requires a "'fair probability that contraband or evidence of a crime will be found in a particular place,' given the circumstances set forth in the affidavit." United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999), cert. denied, 529 U.S. 1029 (2000), quoting Illinois v. Gates, supra at 238. We find nothing in this Record to dispute the obvious -- that law enforcement

established a nexus between the Defendant, and the northwest bedroom of the Stillday residence, based upon the information provided by C.J.S., and her statements that the assault had taken place there, and that evidence of the assault could be found there.

In sum, based upon the information provided by C.J.S., standing alone, there would have been probable cause to believe that the Defendant assaulted C.J.S., and that evidence of the assault would be found in the northwest bedroom of the Stillday residence. As we have detailed, we find that the Search Warrant was not defective on probable cause grounds, nor can we conclude that evidence should be suppressed as the "fruit of the poisonous tree." Here, it is clear that the agents assigned to the case would have sought a Search Warrant, notwithstanding any illegality of the Defendant's arrest, based upon the victim's statement, and that the Search Warrant would have been sufficiently supported by probable cause considering only that latter evidence. See, United States v. Mithun, supra; United States v. Estrada, 45 F.3d 1215, 1220 (8th Cir. 1995), vacated on other grounds, 516 U.S. 1023 (1995)(the heart of the information upon which the warrant was independent from the illegality).

The Defendant has not drawn any other fatal defects in the Warrant to our attention, and our independent review has failed to disclose any. Therefore, we

recommend that the Defendant's Motion to Suppress Evidence from the Search and Seizure of the northwest bedroom of the Stillday residence be denied.

b.    Search Warrant Authorizing Seizure of Defendant's DNA

The Defendant also moves to suppress the DNA evidence, which was seized from his person, pursuant to the Search Warrant issued on November 18, 2009. Here, we find that our analysis, with respect to the Search Warrant for the Stillday residence, is equally applicable to the Search Warrant authorizing the seizure of DNA evidence from the Defendant, and we conclude that this Search Warrant, even in modified form, so as to consider only the statements of the victim, established that there was a fair probability that evidence of criminal activity would be derived from the use of the Defendant's DNA. Moreover, we conclude that the Search Warrant, and any evidence obtained therefrom, should not be invalidated as the "fruit of the poisonous tree."

Initially, we note that, similarly, the Search Warrant authorizing a seizure of the Defendant's DNA does not contain any information derived from the Defendant's arrest. In his Affidavit, Iverson avers that, during an interview, C.J.S. told him that the Defendant had physically assaulted her, and that he had forced her to have sex with him. She also told him that she did not want to have sex with the Defendant, but

that she did, in order to avoid a further beating. She further advised that the Defendant had strangled her, and that she thought she was going to die. She also reported that, when others at the residence had attempted to take her to the hospital, the Defendant grabbed her and dragged her back inside.

Based upon that information, the Affidavit established probable cause to believe that the Defendant committed a crime against C.J.S., and that the saliva sample would provide DNA evidence that could be compared to other collected evidence. The information provided by the victim related to very recent events, and her statement was specific and detailed enough to support a finding that the Defendant committed a crime. As noted, "law enforcement officers are entitled to rely on information supplied by the victim of a crime, absent some indication the information is not reasonably trustworthy or reliable." United States v. Wallace, 550 F.3d 729, 734 (8th Cir. 2008), citing United States v. McKinney, 328 F.3d 993, 994 (8th Cir. 2003). Here, there is no suggestion that the victim is unreliable, and as such, her statement, standing alone, established probable cause.

In sum, as we found with respect to the first Search Warrant, the second Search Warrant can be sustained on the basis of the victim's statement alone, and therefore,

we find that the Warrant was supported by probable cause, and was not based upon the "fruit of the poisonous tree."

B.    The Defendant's Motion to Suppress Statements.

At the Hearing, the Government advised that it would not be relying on any statement obtained from the Defendant, as he did not provide any statements. Accordingly, we recommend that the Defendant's Motion to Suppress Statements, be denied as moot.

NOW, THEREFORE, It is --

RECOMMENDED:

1.    That the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 22] be denied.

2.    That the Defendant's Motion to Suppress Statements, Admissions, and Answers [Docket No. 23] be denied, as moot.

Dated:  February 1, 2010            _s/Raymond L. Erickson_
                                     Raymond L. Erickson
                                     CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 15, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 15, 2010**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.